No. 26-5057

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

RAMSI A. WOODCOCK

*Plaintiff-Appellant*,

- v. -

UNIVERSITY OF KENTUCKY; ELI CAPILOUTO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ROBERT DIPAOLA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; WILLIAM EUGENE THRO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; JAMES C. DUFF, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF EDUCATION; RUSSELL MATTHEW COLEMAN, ATTORNEY GENERAL

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington
(Docket No. 5:25-cv-00424-DCR)

# NOTICE OF ERRATA

RIMA KAPITAN
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590
rima@kapitangomaa.com

JOE F. CHILDERS
Joe F. Childers & Associates
The Lexington Building
201 West Short Street, Suite 300
Lexington, KY 40507
(859) 253-9824

*Counsel for Plaintiff-Appellant*

Plaintiff-Appellant Ramsi A. Woodcock ("Plaintiff") files this Notice of Errata to correct a errors in Reply Brief of Plaintiff-Appellant. Dkt. 63. During PDF conversion of the document, a page bookmark in the Table of Authorities became undefined and page numbers in the Table of Authorities were thrown off. Plaintiff has regenerated the Table of Authorities, updated document pagination, and updated page numbers in the Table of Contents to conform. Plaintiff also identified the omission of two letters from a quotation from a Supreme Court case. In *Connick v. Myers*, the Court stated: "We caution that a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." 461 U.S. 138, 152 (1982). In quoting that sentence on page 31 of the uncorrected brief (page 24 of the corrected brief), Plaintiff omitted the "er" in "stronger". Plaintiff has corrected that error as well. Apart from these changes, Plaintiff has made no other changes to the document. Plaintiff attaches the corrected brief to this notice.

May 6, 2026

Respectfully submitted,

/s/ Rima Kapitan

RIMA KAPITAN
KAPITAN GOMAA LAW, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590
*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Rima Kapitan

RIMA KAPITAN

No. 26-5057

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

RAMSI A. WOODCOCK

*Plaintiff-Appellant*,

- v. -

UNIVERSITY OF KENTUCKY; ELI CAPILOUTO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ROBERT DIPAOLA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; WILLIAM EUGENE THRO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; JAMES C. DUFF, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF EDUCATION; RUSSELL MATTHEW COLEMAN, ATTORNEY GENERAL,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Kentucky
(Docket No. 5:25-cv-00424-DCR)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

RIMA KAPITAN
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590
rima@kapitangomaa.com

*Counsel for Plaintiff-Appellant*

JOE F. CHILDERS
Joe F. Childers & Associates
The Lexington Building
201 West Short Street, Suite 300
Lexington, KY 40507
(859) 253-9824

**TABLE OF CONTENTS**

Table of Authorities ............................................................................ iv

Introduction............................................................................................1

Argument ...............................................................................................3

A.      Abstention from Review of a Preliminary Investigation Is Not
Appropriate.................................................................................3

B.      The University Bars Plaintiff from Access to an Adequate Remedy
for an Unconstitutional Investigation, Suspension, and Ban Until
After These Measures Have Come to An End .................................9

C.      The University Has Forfeited or Waived Any Objection to
Plaintiff's Argument that the Suspension and Ban Are Separate
Executive Actions for Which Abstention Is Not Appropriate.........11

D.      The Bad Faith Exception to *Younger* Applies...................................12

      1.    No Reasonable Expectation of Success .......................................12

      2.    Retaliation..........................................................................14

      3.    Plaintiff's Speech Was Obviously Protected...............................17

E.      The Bias and Flagrant Unconstitutionality Exceptions Apply ........25

F.      This Court Does Not Need to Remand Because the Parties Have

Briefed the Merits and the Proper Resolution Is Beyond Doubt ....27

Conclusion ..............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Arocho v. Ohio Univ.,*
    *No. 20-4239 (6th Cir. Mar. 18, 2022)* ..........................................................13

*Brown & Williamson Tobacco Corp. v. FTC,*
    717 F.2d 963 (6th Cir. 1983) ..........................................................28

*CardSoft v. Verifone, Inc.,*
    769 F.3d 1114 (Fed. Cir. 2014) ..........................................................11

*Connick v. Myers,*
    461 U.S. 138 (1982) .......................................................... 23, 24

*Counterman v. Colorado,*
    143 S. Ct. 2106 (2023) ..........................................................3, 21

*Cullen v. Fliegner,*
    18 F.3d 96 (2dCir. 1993) .......................................................... 14, 16, 17

*DeCrane v. Eckart,*
    12 F.4th 586 (6th Cir. 2021) .......................................................... 19, 20

*Doe v. Brown University,*
    896 F.3d 127 (1st Cir. 2018) ..........................................................13

*Doe v. University of Kentucky.,*
    860 F.3d 365 (6th Cir. 2017) ..........................................................9

*Fischer v. Thomas (Fischer I),*
    52 F.4th 303 (6th Cir. 2022) ..........................................................4, 5

*Fischer v. Thomas (Fischer II),*
    78 F.4th 864 (6th Cir. 2023) ..........................................................4

*Garcetti v. Ceballos*,
  547 U.S. 410 (2005)..............................................................................18

*Gibson v. Berryhill*,
  411 U.S. 564 (1973)..............................................................................10

*Hardy v. Jefferson Community College*,
  260 F.3d 671 (6th Cir. 2001)........................................... 1, 2, 24, 25

*Hugueley v. Mays*,
  964 F.3d 489 (6th Cir. 2020)................................................................17

*Josephson v. Ganzel*,
  115 F.4th 771 (6th Cir. 2024)........................................... 1, 20, 22

*Khalil v. Trs. of Columbia Univ. in City of New York*,
  *No. 25-CV-2079 (AS)* (S.D.N.Y. Mar. 19, 2026) ...........................................26

*Louisiana Deb. and Lit. v. N. Orleans*,
  42 F.3d 1483 (5th Cir. 1995)..............................................................7

*McPherson v. Kelsey*,
  125 F.3d 989 (6th Cir. 1996)..............................................................11

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021)................................................... *passim*

*Morris v. Crow*,
  117 F.3d 449 (11th Cir. 1997)..............................................................18

*Mulholland v. Marion County Election Bd.*,
  746 F.3d 811 (7th Cir. 2014).................................................. 25, 26

*Myers v. City of Centerville, Ohio*,
  41 F.4th 746 (6th Cir. 2022)..............................................................23

*Netflix, Inc. v. Babin*,
  88 F.4th 1080 (5th Cir. 2023)..............................................................16

*New Orleans Public Service, Inc. v. Council of City of New Orleans (NOPSI)*,
    491 U.S. 350 (1989)..................................................................7

*NLRB v. Yeshiva Univ.*,
    444 U.S. 672 (1979).................................................................23

*Patterson v. Kent State University*,
    155 F.4th 635 (6th Cir. 2025)............................................ 17, 18

*Piggee v. Carl Sandburg College*,
    464 F.3d 667 (7th Cir. 2006)..................................................25

*Saxe v. State College Area School District*,
    240 F.3d 200 (3rd Cir. 2000) ................................................18

*Singleton v. Wulff*,
    428 U.S. 106 (1976)...............................................................28

*Snyder-Hill v. Ohio State University*,
    48 F.4th 686 (6th Cir. 2022)..................................................12

*Sprint Communications, Inc. v. Jacobs,*
    571 U.S. 69 (2013).......................................................... 2, 4, 6

*Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*,
    158 F.4th 1 (1st Cir. 2025) ....................................................26

*Steffel v. Thompson*,
    415 U.S. 452 (1973)..................................................................1

*Students for Justice in Palestine v. Abbott*,
    756 F. Supp. 3d 410 (W.D. Tex. 2024) ..............................26

*Thompson v. Florida Bar*,
    526 F. Supp. 2d 1264 (S.D. Fla. 2007) ..............................13

*University of Kentucky v. Moore*,
    599 S.W.3d 798 (Ky. 2019) ....................................................6

*Winter v. Wolnitzek,*
   834 F.3d 681 (6th Cir. 2016)...................................................................... 4, 5, 7

**Statutes**

45 U.S.C. § 2000d ...............................................................................................12

**Federal Rules**

Fed. R. App. P. 28(a)(8)(A)................................................................................11, 24

Fed. R. App. P. 28(b) .........................................................................................11, 24

**Other Authorities**

*James Duff*, J. David Rosenberg College of Law,
   https://law.uky.edu/people/james-duff............................................................23

*Petition for Military Action Against Israel*, Antizionist Legal Studies
   Movement (Nov. 12, 2024), https://antizionist.net/petition-for-
   military-action-against-israel/..........................................................................19

*Statement of an American Law Professor Opposing Our Colonization of
   Palestine and Commission of Genocide Therein*, What Am I
   Missing? (Mar. 30, 2024),
   https://zephyranth.pw/2024/03/30/statement-of-an-american-law-
   professor-opposing-our-colonization-of-palestine-and-commission-
   of-genocide-therein/..........................................................................................15

# INTRODUCTION

This case should not be before this Court. Universities don't open investigations into the speech of professors when there are no complaints from any student or faculty member on campus. Hearing,R.40, PageID # 1982:15–20. All of this Court's other faculty speech cases have originated with a complaint from a student or colleague. *See, e.g., Josephson v. Ganzel*, 115 F. 4th 771, 779 (6th Cir. 2024) (colleagues); *Meriwether v. Hartop*, 992 F. 3d 492, 499 (6th Cir. 2021) (student); *Hardy v. Jefferson Community College*, 260 F. 3d 671, 674 (6th Cir. 2001) (student). And the written policy of the University of Kentucky's Office of Equal Opportunity (OEO) affirmatively precludes investigating reports that don't allege harm to any member of the community. OEO-Poly §§ I.A, I.B, II.C,R.42-1,PageID#2075, 2079 (stating that "those who are not members of the University Community may not serve as Complainants"). But the University not only opened an investigation into Plaintiff's speech but also suspended him from teaching and banned him from campus even though there were no allegations that he had said or done anything objectionable there. Hearing,R.40, PageID # 1977:3–6.

And federal courts do not abstain from investigations. From the earliest days of the *Younger* abstention doctrine right down to the present, it has been well established that state proceedings do not start for *Younger* purposes until the filing of charges or other compulsory process. *See Steffel v. Thompson*, 415 U.S. 452,

1

473 (1973) (abstention inappropriate until "state prosecution ha[s] been commenced"). In the context of an administrative proceeding for which *Younger* abstention may be appropriate because it is "akin to a criminal proceeding", that means the stage at which the University files formal disciplinary charges. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013). To date, the University is still "simply investigating", Plaintiff's participation in the investigation is voluntary, and the University may decide that he "did not violate any law or policy". Thro Letter 9/19/25,R.19-4,PageID#1066–67. And yet the district court abstained from considering Plaintiff's First Amendment and due process challenges.

In any other context this would be a very strange state of affairs. But not where opposition to Israel is concerned. In this alternate reality, a case can levitate up to the Sixth Circuit on an ether of "undifferentiated fear" of antisemitism, *Hardy*, 260 F. 3d at 682; a university can cite to a news article in the Times of Israel rather than to anything a professor has actually said for the proposition that he is calling for a "second holocaust [sic]", Univ. Resp. 7 & n.6,Dkt.58; the university can claim a right to investigate in order to determine whether it has a basis to investigate, Univ. Resp. 31,Dkt.58; it can file a response brief that does not meaningfully contest three of the professor's four issues on appeal (and omit one entirely); and, for the fourth issue, it can propose that professorial speech should be

2

deprived of protection based on germaneness or "expertise", as if sixty years of Supreme Court jurisprudence on the chilling effects of vagueness—plus this Court's own unequivocal rejection of a germaneness requirement just five years ago—were a nullity. *See Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023); *Meriwether*, 992 F. 3d at 507.

This Court should make this case go away by not only reversing the district court's abstention order but also deciding either Plaintiff's preliminary injunction motion or his request for a permanent injunction.

## ARGUMENT

### A. Abstention from Review of a Preliminary Investigation Is Not Appropriate

The University does not deny that seven other courts of appeals—the First, Third, Fourth, Fifth, Seventh, Ninth, and Eleventh—have all held that abstention is not appropriate prior to the filing of formal disciplinary charges for investigations in the civil enforcement context. Pl.-Br.37–39,Dkt.50 (collecting cases). The University does not deny that six of those circuits have so held specifically in the context of investigations by administrative agencies, such as the one at issue in this case. *Id.* at 35, 37–40. The University does not deny that the nation's federal courts have *never* extended abstention to criminal investigations in which, analogous to the investigation at issue in this case, participation by the target is voluntary and no

finding of probable cause to indict has yet been made. *Id*. at 40–42. (Abstention in the criminal context controls abstention in the civil enforcement context because the Supreme Court countenances abstention in civil enforcement proceedings *only* to the extent that the proceeding is "akin" to a criminal proceeding. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013).) And the University does not deny that the only published court of appeals opinion to hold that abstention was appropriate prior to the filing of disciplinary charges—*O'Neill v. Coughlan*— is no longer good law after the Supreme Court's decision in *Sprint Communications, Inc. v. Jacobs*. Pl.-Br.44–45; 511 F. 3d 638 (6th Cir. 2008); 571 U.S. 69 (2013).

The University attempts only to distinguish three post-*Sprint* precedents in which this Court followed its sister circuits in not abstaining from investigations. *Winter v. Wolnitzek*, 834 F. 3d 681 (6th Cir. 2016); *Fischer v. Thomas (Fischer I)*, 52 F. 4th 303 (6th Cir. 2022); *Fischer v. Thomas* (*Fischer II*), 78 F. 4th 864 (6th Cir. 2023). These attempts to distinguish the cases fail. The University claims that *Wolnitzek* and the *Fischer*s involved potential chill to future speech whereas Plaintiff "has already spoken." Univ. Resp. 46, 48,Dkt.58. Actually, in all three cases, the Judicial Conduct Commission (JCC) was investigating the plaintiffs' past speech. *Wolnitzek*, 834 F. 3d at 686–87 (Winter's mailers and Jones's "'re-elect' statement"); *Fischer I*, 52 F. 4th at 306 (candidate's claim to be Republican

nominee). And Plaintiff must prove chill to prevail on his First Amendment retaliation claim, just like the plaintiffs in *Wolnitzek* and the *Fischer*s. *Wolnitzek*, 834 F. 3d at 689 ("scaring off . . . speech"); *Fischer I*, 52 F. 4th at 307. The University also claims that the plaintiffs in *Wolnitzek* "faced imminent sanctions [whereas Plaintiff] faces none." Univ. Resp. 47,Dkt.58. But both the plaintiffs in *Wolnitzek* and Plaintiff are at the investigation stage of a process that will culminate in sanctions after a formal disciplinary hearing; permanent sanctions were no more imminent in *Wolnitzek* than they are here. *Compare* Ky. Sup. Ct.R.§§ 4.170, 4.180, 4.220, 4.260 (JCC process) *with* OEO-Poly §§ II.C, IV.B.2, IV.B.6,R.42-1,PageID## 2079, 2082–84; Equal Dignity Due Proc. Regul. § I.E.2,R.19-3,PageID#486; Interim Due Proc. Regul. § II.F,R.19-3,PageID#526 (University process). The University further suggests that *Wolnitzek* and the *Fischer*s involved only a constitutional challenge to a statute rather than an investigation regarding whether the plaintiff's conduct "crossed a line prescribed by . . . law." Univ. Resp. 46–47,Dkt.58. But the JCC in *Wolnitzek* and the *Fischer*s was also investigating law violations. It was investigating whether the plaintiffs in those cases had violated canons of Kentucky's code of judicial conduct and the University is investigating whether Plaintiff violated university, state, and federal rules. *Wolnitzek*, 834 F. 3d at 686; *Fischer I*, 52 F. 4th at 310; First NOI,R.19-

15,PageID#1558. So there is no difference between the cases along that dimension either.

The University also tries to distinguish *Wolnitzek* and the *Fischer*s based on the types of claims that the plaintiffs alleged in federal court. Univ. Resp. 46–47,Dkt.58. But the nature of the federal challenge has no bearing on the dispositive question under *Sprint* whether the state proceeding is "akin to a criminal" proceeding. 571 U.S. at 79; Univ. Resp. 46–47,Dkt.58 (distinguishing *Wolnitzek* on ground that it involved a preenforcement challenge to statute as applied and *Fischer I* on the ground that it was decided on a motion for an injunction pending appeal). The University also argues that neither *Wolnitzek* nor the *Fischer*s involved public employees. But that distinction cuts against the University because both *Wolnitzek* and the *Fischers* involved investigations by the JCC. If an investigation by an arm of the Kentucky court system is not sufficiently "akin to a criminal" proceeding for abstention to apply then *a fortiori* abstention is not appropriate for an investigation by an executive agency such as the University. Ky. Const. § 121 (JCC governed by Kentcky Supreme Court); *University of Kentucky v. Moore*, 599 S.W. 3d 798, 806 (Ky. 2019) (holding that University of Kentucky is within the executive branch).

The University contends that abstention is appropriate because an investigation is a prerequisite to the filing of disciplinary charges. Univ. Resp.

44,Dkt.58. But that is also true of investigations by the JCC as well as bodies in other circuits for which courts have held abstention to be inappropriate. *See, e.g.,* JCC § 4.170(1) ("[T]he Commission shall make a preliminary investigation to determine whether formal proceedings should be initiated."); *Louisiana Deb. and Lit. v. N. Orleans,* 42 F. 3d 1483, 1486 (5th Cir. 1995) ("Upon a complaint being filed, the Commission is to conduct a prompt investigation in order to make a probable cause determination."). And anyway the enactment of the statute to be enforced is also a prerequisite of the filing of disciplinary charges, but *New Orleans Public Service, Inc. v. Council of City of New Orleans* (*NOPSI*), held that abstention is categorically inappropriate for legislative proceedings. 491 U.S. 350, 368 (1989). So looking to prerequisites for the filing of disciplinary charges does not work.

A motions panel of this Court made a variation of this argument when it said that abstention might be appropriate because the OEO handles both investigations and the disciplinary process. IPA CA6 Denial 9,Dkt.13-1. That holding was mistaken. This and other courts have refused to abstain from investigations by the JCC and other bodies that centralized control over investigations and disciplinary proceedings, so centralization can't be determinative. *See Wolnitzek,* 834 F. 3d at 687; R.S.C.Ky. §§ 4.170(1), 4.180, 4.260(3); *Louisiana Deb. and Lit.*, 42 F. 3d at 1486. And, the University's ad hoc procedure for Plaintiff's case puts the

investigation and decision whether to charge Plaintiff in the hands of an outside investigator and the president, not the OEO. Thompson Letter,R.19-15,PageID#1570–71.

Both of these arguments from the administrative structure of the University disciplinary process presuppose that state rules—in the form of University administrative policies—govern. But authority for that proposition traces to *O'Neill*, and in its response the University doesn't dispute that *O'Neill* is no longer good law after *Sprint*. *Cf. James v. Hampton*, No. 12-1453, slip op. 7 (6th Cir. Jan. 30, 2013) (unpublished) (citing *O'Neill*). *Sprint* held that abstention extends no further than permitted by *NOPSI*, and *NOPSI* requires that courts look to the function of the proceeding as opposed to state law. Pl.-Br.42–44,Dkt.50.

The University also contends that forgoing abstention for preliminary investigations will lead plaintiffs to file more federal cases and employers to rush investigation to avoid suit. Univ. Resp. 45,Dkt.58. But these questions aren't hypothetical. Non-abstention from investigations is already the law everywhere for criminal investigations and in this and most other circuits for civil enforcement actions. Pl.-Br.36–42. Defendants point to no authority establishing that, in the many jurisdictions in which the rule applies, plaintiffs challenge too many investigations or enforcement authorities rush investigations. Even if such harms exist, non-abstention has the countervailing benefit of discouraging

unconstitutional investigations, suspensions, and bans. Finally, the University contends that this court should abstain from a University investigation because it abstained from the student disciplinary proceeding in *Doe v. University of Kentucky*. 860 F. 3d 365, 368, 371 (6th Cir. 2017). But abstention from a university investigation was not at issue in that case. *Id*. at 368 (plaintiff sued after completion of an investigation and the filing of formal disciplinary charges). The University fails to address any other part of Plaintiff's argument, notably Plaintiff's argument that an investigation is a "core executive power" for which abstention is not appropriate under *NOPSI*. Pl.-Br.at 42,Dkt.50.

## B. The University Bars Plaintiff from Access to an Adequate Remedy for an Unconstitutional Investigation, Suspension, and Ban Until After These Measures Have Come to An End

The University does not deny that it will rule on Plaintiff's constitutional objections to the investigation, suspension, and ban only after the investigation, suspension, and ban have come to an end. Pl.-Br.46–47,Dkt.50. The University does not deny that this precludes Plaintiff from access to the only remedy adequate to address an unconstitutional process: stopping the process in its tracks. *Id*. The University states only that Plaintiff can "make constitutional arguments . . . throughout the investigation" and that "the investigator will consider [Plaintiff's constitutional objections] as she makes her report." Univ. Resp. 27,Dkt.58. But that does not mean the investigator has the power to rule on Plaintiff's constitutional

9

objections. She will "not serve as the decision-maker". Thompson Letter 8/25/25,R.19-15, Page ID # 1570. All the investigator can do is include them in the "attorney-client privileged report" she sends to the president, who will not issue a decision until after the investigation has come to an end. *Id*. Because the dean has said that the suspension and ban will continue only "for the duration of the investigation", that means that the University has barred Plaintiff from access to a remedy for all three of the measures that he challenges—the investigation, suspension, and ban—until *after* they have come to an end. Duff Letter,R.19-3,PageID#493.  That is not the "timely" access to an adequate remedy for constitutional harm that the Supreme Court requires of a state proceeding before it will permit abstention. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

The University also observes that it is prepared to rule on Plaintiff's constitutional claims at any disciplinary hearing that it may convene, as part of any appeal, and before the board of trustees. Univ. Resp. 27–28,Dkt.58. But all three of those opportunities will come only *after* the unconstitutional investigation, suspension, and ban have ended. PI Order,R.37,PageID#1791 & n.12 (stating that "sanction-related proceedings" will take place after the president rules on the investigator's report). It does not matter how many University tribunals will have an opportunity to condemn the violation of Plaintiff's rights after the investigation,

suspension, and ban have come to an end. Unless they can travel back in time, the tribunals will be powerless to provide an adequate remedy.

**C. The University Has Forfeited or Waived Any Objection to Plaintiff's Argument that the Suspension and Ban Are Separate Executive Actions for Which Abstention Is Not Appropriate**

In his opening brief, Plaintiff argued that the suspension and ban constitute a separate staffing proceeding, executive in character, for which abstention is not appropriate. Pl.-Br.55–59,Dkt.50. Plaintiff raised this objection in the district court, the district court rejected it in its opinion, and Plaintiff properly raised it on appeal. Abst. Resp.,R.29,PageID#1546–47; PI Order,R.37,PageID##1776–77. The University fails to mention, much less address, this issue anywhere in its response brief, as does the Attorney General. The University is required to provide its "contentions and the reasons for them". Fed.R.App. P. 28(a)(8)(A), 28(b). This Court should treat the University's "fail[ure] to respond" as a "waiv[er]" of its rights with respect to this issue. *CardSoft v. Verifone, Inc.*, 769 F. 3d 1114, 1119–20 (Fed. Cir. 2014); *McPherson v. Kelsey*, 125 F. 3d 989, 995–96 (6th Cir. 1996). Because the University is permitted to incorporate the arguments of the Attorney General by reference, the University effectively had up to 26,000 words to devote to its response. Fed.R.App. P. 32(a)(7)(B)(i). Accordingly, this Court should at a minimum reverse the district court's decision to abstain with respect to Plaintiff's challenge to the suspension and ban.

**D. The Bad Faith Exception to *Younger* Applies**

**1.      No Reasonable Expectation of Success**

The University does not deny that when the investigation, suspension, and ban were implemented there were no complaints about Plaintiff from any member of the University community. Pl.-Br.23, 60,Dkt.50. That is enough to show that the University lacked a reasonable expectation that Plaintiff had violated rules prohibiting a hostile environment. The OEO only investigates reports of harm to members of the University community. OEO-Poly §§ I.A, I.B, II.C,R.42-1,PageID#2075, 2079. And Title VI, which prohibits hostile environments on campus, applies only to persons "attempting to participate" in University "program[s] or activit[ies]". 45 U.S.C. § 2000d; *Snyder-Hill v. Ohio State University*, 48 F. 4th 686, 708 (6th Cir. 2022) (discussing standard in the context of Title IX, an analogue of Title VI for sex discrimination). So, at the time the University acted, it had no hope that the OEO would investigate Plaintiff, much less file disciplinary charges against him.

The University does not meaningfully respond to this argument. In a footnote, the University suggests that Title VI covers anyone who interacts with a University employee, which in turn suggests that the professors at other schools who complained about Plaintiff's posts might be covered by Title VI if they

interacted with Plaintiff online. Univ. Resp. 10 n. 40. But the courts require a far stronger nexus with the University before Title VI coverage kicks in. *See Doe v. Brown University*, 896 F. 3d 127, 129, 133 (1st Cir. 2018) (plaintiff who was assaulted by Brown students in their campus dormitory not covered); *Arocho v. Ohio Univ.*, No. 20-4239, slip op. at 1–2, 8–9 (6th Cir. Mar. 18, 2022) (unpublished) (plaintiff high school student who was assaulted on campus in a university police cruiser by a university police officer whom she had met at an on-campus career day not covered).

The University also states that "at this time" "there is reason to believe" Plaintiff's "speech as a private citizen amounts to harassment under Title VI." Univ. Resp. 35,Dkt.58. But the University does not explain why and anyway the question whether the University launched the investigation, suspension, and ban in bad faith turns on the University's expectations "at the time" that it "instituted" the proceedings, not later. *Thompson v. Florida Bar*, 526 F. Supp. 2d 1264, 1277 (S.D. Fla. 2007). That is why the allegations in the second notice of investigation—that Plaintiff made mild pro-Palestine remarks at two extracurricular events—are not relevant to this inquiry. *See* Second NOI,R.19-15,PageID#1573–74.

**2. Retaliation**

Retaliation is an independent ground for establishing bad faith under *Younger*. *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2dCir.1993). The impetus for the University's actions was a desire to initiate a hostile environment investigation against Plaintiff in response to his posting of his petition for military action to AALS discussion groups. Pl.-Br.21, 61–62. In its response, the University reinforces this fact. The University states that it "began the faculty disciplinary process" "[b]ecause antisemitic statements can violate Title VI". Univ. Resp. 10. And the University cites a newspaper article that discusses Plaintiff's petition and the Antizionist Legal Studies Website on which it appears as authority for the proposition that Plaintiff's speech is antisemitic. Univ. Resp. 7–8 & n. 26. The timing of the University's actions reinforces this view. Pl.-Br.21, 61–62,Dkt.50 (noting that the University abruptly initiated the investigation 12 days after Plaintiff posted his petition to AALS); Capilouto Message,R.19-3,PageID#496–97.

But the University did not include a hostile environment allegation in the first notice of investigation. Capilouto Message,R.19-3,PageID#496–97; *compare* First NOI,R.19-15,PageID#1558–59 *with* Second NOI,R.19-15,PageID#1573. It lacked covered complainants. So the University instead alleged that Plaintiff had been "spamming", speaking for the University without authorization, and misusing University resources, and it broadened the scope of the investigation to include

Plaintiff's conference statements. First NOI,R.19-15,PageID#1558–60. This was a retaliatory multiplication of charges.

The rules that the University invoked for the new charges are rarely enforced and the University had delayed enforcing them against Plaintiff. Bird-Pollan Decl. ¶¶ 6–7, 10,R.19-8,PageID#1113–14; Michael Decl. ¶ 2,R.19-8,PageID#1108. The University knew about plaintiff's conference statements as early as February 2024 when he spoke at George Mason. First NOI,R.19-15,PageID#1559. But the University did not allege that he had misused University resources or violated an institutional statements policy at the time. The OEO director testified that she learned in 2024 of a statement plaintiff had sent to the faculty listerv in the spring of that year calling for an end to Israel and approving military action.[1] Hearing Tr.,R.40,PageID#1949–51, 1819–20. But the University did not charge plaintiff with "spamming" at the time. The University also did not charge a law faculty member with "spamming" five years earlier when she circulated a Black Lives Matter statement to the faculty listserv. Bird-Pollan Decl. ¶ 7, 10,R.19-8,PageID#1113.

---

[1] *Statement of an American Law Professor Opposing Our Colonization of Palestine and Commission of Genocide Therein*, What Am I Missing? (Mar. 30, 2024), https://zephyranth.pw/2024/03/30/statement-of-an-american-law-professor-opposing-our-colonization-of-palestine-and-commission-of-genocide-therein/.

The University does not deny that the rules against speaking for the University, misuse of resources, and "spamming" are rarely enforced or that it delayed bringing those charges. Pl.-Br.61–62,Dkt.50. The University argues that Plaintiff's conference statements and his speech at the public lecture are not covered by the First Amendment. Univ. Resp. 36–38. But for purposes of establishing that the bad faith exception applies based on retaliation, "the expectations for success of the party bringing the action need not be relevant". *Cullen*, 18 F. 3d at 104.

The measures taken by the University to bypass the OEO and control the outcome of the investigation and any subsequent disciplinary proceeding contribute to the "mosaic" of facts that can lead to an inference of bad faith. Pl.-Br.23–24, 60–61,Dkt.50; *Netflix, Inc. v. Babin*, 88 F. 4th 1080, 1096 (5th Cir. 2023). A motions panel of this Court held that the ad hoc process is "just like" the OEO process, and the dean claimed to be following "protocol", but neither accounted for three key departures from OEO procedures: the investigatory report is now secret, the president rather than the OEO director now decides whether to file charges, and the president now has "sole discretion" to recommend termination regardless of the outcome of any disciplinary proceeding. Pl.-Br.22–24, Dkt.58; IPA CA6 Denial 9,Dkt.37; Hearing Tr.,R.40,PageID#1972:3–9.

The University suggests that Plaintiff didn't properly raise the retaliation ground for bad faith below. Univ. Resp. 28–29,Dkt.58. But Plaintiff clearly argued harassment and pretext (i.e., retaliation), as well as ad hoc procedure below. Abst.Resp.,R.29,PageID#1551–52; *cf. Hugueley v. Mays*, 964 F.3d 489, 501 n.4 (6thCir.2020) (new arguments for an issue raised below are permitted).

**3.     Plaintiff's Speech Was Obviously Protected**

The University argues that it had a reasonable expectation that Plaintiff's speech was not protected. Univ. Resp. 34–43. But that doesn't matter if a lack of complaints meant that the University's hostile environment claim was futile and the other claims were retaliatory (because retaliation can exist even with a reasonable expectation of success). *Cullen*, 18 F. 3d at 103–04. Even so, at the time that it acted, the University had no reasonable expectation that Plaintiff's posting of the petition or conference statements were not protected.

**a.     Plaintiff's Speech Was on a Matter of Public Concern**

The University has never denied that Plaintiff's speech was on matters of great public concern: Palestine, colonization, apartheid, and genocide. Pl.-Br.68,Dkt.50. The University cites *Patterson v. Kent State University* for the proposition that speech that is "disrespectful" is not on a matter of public concern. 155 F. 4th 635, 650–51 (6th Cir. 2025); Univ. Resp. 31–32,Dkt.58. But the courts

have only applied this rule to speech that is directed at colleagues or supervisors in the workplace, so it doesn't apply here. *Patterson*, 155 F. 4th at 650; *Morris v. Crow,* 117 F. 3d 449, 457 (11th Cir. 1997). The University argues that speech that creates a hostile environment "is also unprotected". Univ. Resp. 40, Dky. 58. But the first notice of investigation does not allege a hostile environment. First NOI,R.19-15,PageID#1558–59. And anyway there is "no categorical 'harassment exception' to the First Amendment's free speech clause". *Saxe v. State College Area School District*, 240 F.3d 200, 204 (3rdCir.2000)(Alito,J.).

**b.      Plaintiff Spoke for Himself, Not the Government**

**(1)      Plaintiff Spoke for Himself as a Private Citizen**

The University suggests that "to the extent" that plaintiff used a University computer to create or post his petition, had access to AALS discussion groups in virtue of his university affiliation, and was introduced at the conference as a university of Kentucky professor, plaintiff spoke for the government. Univ. Resp. 36–38,Dkt.58. But use of employer resources or affiliation is not the standard. That's clear because the Supreme Court has recognized that speech in the workplace—which necessarily is premised on affiliation with the employer and use of employer resources such as real estate—can be protected. *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2005). The standard is whether the employee spoke as an agent

of the employer, such that his speech was the government's speech. *DeCrane v. Eckart*, 12 F. 4th 586, 594–95 (6th Cir. 2021). This Court considers the: (1) motivation for the speech was to fulfill a job duty; (2) setting of the speech, such as whether it was in the office or outside of it; and (3) audience, such as whether the speech was directed at outsiders or up the chain of command. *Id*.

Plaintiff's petition-posting and conference speech took place in fora hosted by other institutions to audiences of outsiders. Moreover, there is uncontroverted evidence that the University thought that, when Plaintiff spoke, he was trying to express his personal views rather than those of his government employer. Dean Duff testified that the University acted against Plaintiff's conference speech because "the taxpayers of Kentucky should not have to fund someone's personal viewpoints" and against his AALS postings because Plaintiff was not permitted to "use university . . . resources to espouse [his] personal political viewpoints." Hearing Tr.,R.40,PageID#1993:7–9,1995:4–5. At the time that it acted, the University had access to Plaintiff's petition, which stated that "[i]nstitutional affiliations . . . do not imply institutional endorsement."[2] *Id*. at 1988:15–16,25,1989:1–3. And when asked whether he considered Plaintiff's postings on

---

[2] *Petition for Military Action Against Israel*, Antizionist Legal Studies Movement (Nov. 12, 2024), https://antizionist.net/petition-for-military-action-against-israel/.

Palestine to be "academic work", Dean Duff responded: "It wasn't." *Id*. at 1995:10–16.

The University suggests that *Josephson v. Ganzel* supports the view that use of University resources or affiliation would establish that Plaintiff spoke for the University. 115 F.4th 771 (6thCir.2024); Univ.-Resp.37&nn.146–47. But *Josephson* appealed to no such rule. In *Josephson*, the Court held that an academic administrator—the chief of a division—spoke in his private capacity where he did *not* use University resources or affiliation to present at a thinktank. *Josephson*, 115 F. 4th at 777, 784. The question whether Josephson's *use* of resources or affiliation would have deprived his speech of protection was not before the Court. And *Garcetti v. Ceballos* tells us that his speech might still have been protected as private citizen speech even if he had used University resources and affiliation. 547 U.S.at420.

**(2)     As a Scholar**

Even if Plaintiff was speaking to fulfill his job duties, however, Plaintiff's speech was still protected. The Court in *Meriwether* recognized that professors have "core academic functions such as teaching and scholarship" as well as what the Court called "non-ideological ministerial" duties such as "call[ing the] roll at the start of class". 992 F.3d at 505,507. The former are protected because, unlike

the speech duties of most public employees, the speech duty of a professor is to engage in independent thought rather than to relate the views of the government. *Id*. at 503; Bird-Pollan Decl. ¶¶ 10–11,R.19-8,PageID#1114–15; Michael Decl. ¶¶ 2,R.19-8,PageID#1108. The University does not argue that in posting the petition or speaking at conferences Plaintiff was seeking to carry out a "non-ideological ministerial" duty such as calling the roll in class. The only other job duty that Plaintiff could have been trying to fulfill when he posted the petition and spoke at the conferences was scholarship. Fac.R.§ 13,R.19-8,PageID#1203–05 (identifying teaching, research and service as job duties).

Instead, the University tries to argue that the First Amendment does not apply to scholarly speech that falls outside of a scholar's area of expertise or is off topic. Univ. Resp. 37,Dkt.58. That rule appears nowhere in the federal reports and would chill speech because it would require scholars to navigate vague, content-based definitions of "topic" and "expertise". *See Counterman v. Colorado*, 143 S. Ct. 2106, 2114–15 (2023) (stating that if "a speaker [is] unsure about the side of a line on which his speech falls[, t]he result is 'self-censorship'"). The rule also directly conflicts with the holding of *Meriwether*. In that case, the Court held that a professor's use of "Mr." and "Ms." to address students in class carried the protected message "one's sex cannot be changed." *Meriwether*, 992 F. 3d at 499, 508. The Court emphasized that the professor's basis for conveying this message

was his religious faith and made no mention of a connection with his academic expertise in philosophy. *Id*. at 502. And the professor taught a range of philosophy courses only one of which—Political Philosophy—touched on gender identity. *Id*. at 498,506. In ruling that Meriwether's use of pronouns was protected, the Court was saying in effect that when Meriwether addressed a student in his History of Christian Thought course thusly, "Mr. Doe: please describe St. Thomas's five proofs for the existence of God", he was actually saying: "Doe: *sex cannot be changed* and please describe St. Thomas's five proofs for the existence of God." Accordingly, the Court held that Meriwether's speech was protected "whether that speech is germane to the contents of the lecture or not." *Id*. at 507.

The University attempts to limit *Meriwether* to classroom speech. Univ. Resp. 36,Dkt.58 (suggesting that *Josephson* was needed to "extend[]" *Meriwether* to the conference context). But the Court made clear that the basis for its holding was that *Meriwether* was "engaged in core academic functions, such as teaching and scholarship." *Meriwether*, 992 F. 3d at 505. The University also points for authority to the Court's observation in *Josephson* that the professor's remarks were protected scholarship because they were on a subject "he taught and wrote about as a child psychiatry expert". 115 F. 4th at 786. This observation is only about expertise, not on-topic speech. And the Court did not hold that expertise was a *necessary* condition for protection, only that it was *sufficient* in that case.

Even if there were a rule limiting protection to on-topic speech within expertise, the University had no reasonable expectation that Plaintiff's speech fell outside of it. Plaintiff taught international law, which concerns Palestine. Topicality is not at issue for Plaintiff's posting of the petition. And the faculty alone are competent to judge the topicality of Plaintiff's conference speech, but the University did not consult the faculty before acting (Dean Duff is not appointed a member of the law faculty).[3] *NLRB v. Yeshiva Univ.*, 444 U.S. 672, 689 (1979); Michael Decl. ¶¶ 7, 9,R.19-7,PageID#1109.

**c.      The University Had No Reasonable Expectation of Disruption**

The University argues that even if Plaintiff's speech were protected, that protection might still have been overcome by *Pickering* balancing. Univ.-Resp. 41–43,Dkt.58; *see Meriwether*, 992 F. 3d at 507–08. But the University lacked complaints from the University community, so it could not meet its burden of proving disruption under *Pickering*. *Myers v. City of Centerville, Ohio*, 41 F. 4th 746, 764 (6th Cir. 2022). And because Plaintiff's speech was on a matter of great public concern, that burden was at its zenith. *Connick v. Myers*, 461 U.S. 138, 150 (1982).

---

[3] *James Duff*, J. David Rosenberg College of Law,
https://law.uky.edu/people/james-duff.

The Attorney General relies on *Connick v. Myers* for the proposition that the University does not need to show evidence of actual disruption. AG Resp. 26,Dkt.55; 461 U.S. 138 (1982). But the speech in that case was an office grievance that was of "public concern in only a most limited sense" and the Court cautioned that "a stronger showing may be necessary if", as here, "the employee's speech more substantially involved matters of public concern." *Id*. at 150, 152–54. Moreover, this Court has clarified that evidence of potential harm is insufficient where the speech of professors on matters of public concern is at issue. In *Hardy v. Jefferson Community College*, the university argued that the plaintiff's in-class discussion of "socially controversial words" had attracted the interest of a Reverend Coleman, a "'prominent citizen' representing the interests of the African American community" who had "threatened to affect the school's already-declining enrollment if corrective action was not taken." 260 F. 3d 671, 675, 678 (6th Cir. 2001). The Court gave no weight to such "undifferentiated fear or apprehension of disturbance" or interest in "avoid[ing] the discomfort and unpleasantness that always accompany a controversial subject." *Id*. at 682.

Seemingly aware that the record is devoid of evidence of actual disruption, the University refers in its brief to a benefector's request to dissociate its name from Plaintiff's chair that was not entered into the record below. The text should be stricken. *See* Fed.R.App. P. 28(a)(8)(A), 28(b). *Hardy* squarely rejected such

evidence when it held that Reverend Coleman's threats to drive down enrollment could not overcome a professor's right to speak. *Hardy,* 260 F. 3d at 675, 681–82. For his part, the Attorney General lists various University interests. AG Resp. 29,Dkt.55. But without evidence of actual harm, these, too, are mere "undifferentiated fear[s]." *Hardy*, 260 F. 3d at 682. Finally, the University worries that it might not be able to stop faculty from proselytizing at conferences. It might, if there are complaints from members of the University community. *See Piggee v. Carl Sandburg College*, 464 F. 3d 667, 672 (7th Cir 2006).

### E. The Bias and Flagrant Unconstitutionality Exceptions Apply

The University argues that the President's condemnation of Plaintiff's views does not reflect prejudgment of the issues. Univ. Resp. 23–33,Dkt.58. But the president went beyond stating that he believes Plaintiff's views to be wrong. He stated that Plaintiff wishes to "destroy a people", which prejudges a specific allegation in the second notice of investigation. Capilouto Letter,R.19-3,PageID#496; Second NOI,R.19-15,PageID#1573–74 (alleging Plaintiff called for "the genocide of Israeli people"). And the University fails to respond to Plaintiff's argument that there is initiator-adjudicator bias. Pl.-Br.66,Dkt.50.

In *Mulholland v. Marion County Election Bd.*, the Seventh Circuit ruled that an exception to *Younger* abstention applies where the state "attempt[s] to enforce a

law that a federal court has already told the [state] in a final judgment is unconstitutional". 746 F. 3d 811, 819 (7th Cir. 2014). The University is attempting to enforce the IHRA definition of antisemitism against Plaintiff and the IHRA has been found unconstitutional around the country. *See, e.g., Students for Justice in Palestine v. Abbott*, 756 F. Supp. 3d 410, 427 (W.D. Tex. 2024); *Khalil v. Trs. of Columbia Univ. in City of New York*, No. 25-CV-2079 (AS), 2026 WL 775813, at *7 (S.D.N.Y. Mar. 19, 2026) (finding that the plaintiffs "plausibly allege that the Agency defendants coerced Columbia to adopt a definition of antisemitism [the IHRA definition] through which it would punish and suppress plaintiffs' political speech"). The Brandeis Center's amicus brief attempts to distinguish the *Stand With Us v. MIT* case on the basis that the court in that case criticized conflation of antizionism with antisemitism generally, a broader principle than the IHRA definition. Dkt. 61. But the court in that case *quoted* from the IHRA definition to reach its conclusion—specifically, from the section of the IHRA that attempts to equate "[d]enying the Jewish people their right to self-determination" (in other words, rejecting Zionism) with antisemitism. The court found this conflation to be an attempt to ban protected speech. *Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 158 F.4th 1, 17 (1st Cir. 2025).

In its response, the University claims that its "need to investigate does not rise or fall on the . . . IHRA". Univ. Resp at 33,Dkt.58; *see also* AG Resp. 29–

31,Dkt.55. But in the same document the University states that it "began the faculty disciplinary process" "[b]ecause antisemitic statements can violate Title VI" and cites federal and state rules adopting the IHRA definition as authority for the claim that Plaintiff's views are antisemitic. Univ. Resp. 7–8, 10.

### F. This Court Does Not Need to Remand Because the Parties Have Briefed the Merits and the Proper Resolution Is Beyond Doubt

The University provides no meaningful response to Plaintiff's contention that the University has not met its burden on causation for purposes of Plaintiff's First Amendment retaliation claim. The Attorney General mentions in a footnote that he does not concede causation, but that is all. AG-Resp.17n.3,Dkt.55. With respect to adverse action, the Attorney General recapitulates arguments from earlier filings that a suspension by itself is an adverse action. AGResp.First Emerg.Mot., Dkt.15. But the Attorney General fails to engage with Plaintiff's claim that the investigation, suspension, and ban are adverse actions when considered in gross, or when the investigation and ban are considered severally. Pl.-Br.68,Dkt.50. Finally, as detailed above, the University has offered zero evidence of disruption and cannot point to a job duty that Plaintiff was fulfilling when he spoke—apart from that of scholarship, which the First Amendment protects. *See Meriwether,* 992 F. 3d at 507.

27

As the Attorney General concedes, this Court has authority to reach the merits regardless of whether Plaintiff raises them, so the University and Attorney General's waiver arguments are not apposite. *Brown & Williamson Tobacco Corp. v. FTC*, 717 F. 2d 963, 964 (6th Cir. 1983); AG Resp. 13 ("the Court has discretion as to which path to take"). Plaintiff made no incorporations by reference. *Singleton v. Wulff* requires that the merits have been briefed in the record before a court of appeals may reach them, so Plaintiff had to cite to merits arguments in other filings. 428 U.S. 106, 120 (1976). Plaintiff did not include his request in the Statement of Issues because it was not an assignment of error to the district court, which did not pass on the merits below. Pl.-Br.4, 32, 67–69,Dkt.50.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court reverse both the District Court's denial of Plaintiff's Motion for a Preliminary Injunction and the District Court's grant of Defendants' Motion to Abstain and grant such other relief as it deems appropriate.

May 4, 2026

Respectfully submitted,

| /s/ Rima Kapitan | /s/ Joe F. Childers |
|---|---|
| RIMA KAPITAN | JOE F. CHILDERS |
| HANNAH MOSER | Joe F. Childers & Associates |

| Kapitan Gomaa Law, P.C. | The Lexington Building |
| P.O. Box 6779 | 201 West Short Street, Suite 300 |
| Chicago, IL 60680 | Lexington, Kentucky 40507 |
| (312) 566-9590 | (859) 253-9824 |

*Counsel for Plaintiff-Appellant*

## TYPE-VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(g), Rima Kapitan hereby certifies that this brief complies with the type-volume limitation in Rule 32(a)(7)(B) because, as counted by the Microsoft Word word count tool, this brief contains 6,373 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated: May 4, 2026

/s/ Rima Kapitan

RIMA KAPITAN
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief Of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 4, 2026

/s/ Rima Kapitan

RIMA KAPITAN
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590