No. 26-5057

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RAMSI A. WOODCOCK

*Plaintiff-Appellant*,

- v. -

UNIVERSITY OF KENTUCKY; ELI CAPILOUTO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ROBERT DIPAOLA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; WILLIAM EUGENE THRO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; JAMES C. DUFF, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF EDUCATION; RUSSELL MATTHEW COLEMAN, ATTORNEY GENERAL

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington
(Docket No. 5:25-cv-00424-DCR)

## REPLY TO KENTUCKY ATTORNEY GENERAL'S AND THE UNIVERSITY'S RESPONSE TO MOTION OF JVP ACTION, CRITICAL LEGAL COLLECTIVE AND MIDDLE EAST STUDIES ASSOCIATION FOR LEAVE TO FILE OUT OF TIME BRIEF AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT RAMSI A. WOODCOCK

Dan Stormer
Hanna Chandoo
Bina Ahmad
Hadsell Stormer Renick & Dai LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103
*Counsel for Movants and Amici*

i

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................1

    A.        The Kentucky Attorney General Does Not Dispute, while the University Weakly Disputes, That Amici's Brief Meets the Adequate Interest, Desirability, and Relevance Requirements for Grant of Leave to File of an Amicus Brief.........................................1

    B.        The Attorney General's and University's Arguments of Prejudice to Themselves and Burden to this Court Do Not Defeat Amici's Interest and the Important Information Amici Provides to the Court .......................................................................................................5

        1.      Granting an Out-of-Time Filing Does Not Prejudice the Attorney General........................................................................................6

        2.      Granting an Out-of-Time Filing Does Not Impose a Burden on This Court .........................................................................................8

    C.        Amici's Brief Presents an Informative Contrast to the Brandeis Center's Amicus Brief on the IHRA Definition ..............................9

CONCLUSION .......................................................................................................10

**INTRODUCTION**

Neither the Kentucky Attorney General's nor the University's oppositions to amici's out-of-time brief dispute that amici meet the diligence standard requirements for filing the brief. The Attorney General's remaining arguments opposing amici's brief, that it prejudices the Attorney General and imposes a burden on the Court, do not defeat amici's interest in this case nor the important information amici have to provide the Court. In addition, the University's arguments that amici do not have an interest are wholly without merit. As amici's brief is in direct response to the Brandeis Center's amicus brief, namely the IHRA definition, it offers a critical and different perspective which the Court should hear. For these reasons, this Court should permit amici to file their out-of-time amicus brief.

**ARGUMENT**

**A. The Kentucky Attorney General Does Not Dispute, while the University Weakly Disputes, That Amici's Brief Meets the Adequate Interest, Desirability, and Relevance Requirements for Grant of Leave to File of an Amicus Brief**

In their oppositions, both the Attorney General and the University do not overcome the fact that amici's brief meets all of the requirements for grant of leave to file an amicus brief. In their motion, amici argued that their brief meets the permissive standard for granting leave to file an amicus brief because amici (1) have an adequate interest in the case, (2) grant of the motion is desirable and (3)

the brief is relevant to the case. *Neonatology Assocs., PA v. CIR*, 293 F. 3d 128, 131 (3d Cir. 2002); Motion of JVP at 3–6, Dkt. 77.

The Attorney General does not contest that each of these factors is met. Instead, the Attorney General concedes that "[i]f amici had timely moved to file their amicus brief, the [Attorney General] would have consented to its filing[.]" AG's Response to Motion of JVP at 1, Dkt. 80.

The University appears to argue in response that amici do not have an adequate interest in this case because the University "has not penalized Professor Woodcock for his speech[.]" University's Response to Motion of JVP 2, Dkt. 83. In amici's view, a suspension from teaching, ban from the law school building, and subjection to an investigation represent penalties. But even if they did not, "penalize[ation]" of a faculty member is not required for amici to have an adequate interest in the case. That is not the standard for determining whether an adequate interest exists.

Instead, the standard is "broad[]" and a "policy" interest is adequate to justify leave to file an amicus brief. *Neonatology Assocs., PA*, 293 F. 3d at 132–34 (stating that "it is preferable to err on the side of granting leave"). Amici's interest in the case easily meets such a permissive standard because, to the extent that this appeal reaches the constitutionality of the IHRA definition of antisemitism, the

outcome of this appeal might enable universities in Kentucky and around the country to punish the speech of amici's members.

The University claimed in its opening brief that it was compelled to suspend Professor Woodcock from teaching, ban him from the law school building, and initiate an investigation into his conduct because "antisemitic statements can violate Title VI" of the Civil Rights Act of 1964 and, in the University's view, federal and state rules require that it rely on the IHRA definition in determining what constitutes an antisemitic statement. University Opening Br. 10–11 & nn. 38, 43, Dkt. 68; 42 U.S.C. § 2000d. As amici noted in their motion, the IHRA definition lists as examples of antisemitic speech statements that amici have or may make as students, teachers, scholars, or private citizens, such as that statement that "the existence of a State of Israel is a racist endeavor."[1]

Successful application of the IHRA definition by the University to discipline Professor Woodcock would permit the University to discipline current or future members of amici who teach at University of Kentucky, could create Sixth Circuit precedent that would allow universities throughout the jurisdiction to engage in similar conduct, and might persuade other courts of appeals to take a similar

---

[1] *Working Definition of Antisemitism,* International Holocaust Remembrance Alliance (IHRA), https://holocaustremembrance.com/resources/working-definition-antisemitism.

approach, thereby allowing universities across the country to punish the speech of amici's members as well. These possible consequences chill the speech of amici's members and give them a strong policy interest in this appeal. That easily meets the permissive standard for granting leave to file an amicus brief.

The University also suggests that amici's brief is not relevant or desirable because this appeal is about "whether *Younger* abstention appli[es]" rather than the constitutionality of the IHRA definition of antisemitism. University's Response to Motion of JVP at 1–2, Dkt. 83. It is true that neither Professor Woodcock nor the University discussed the constitutionality of the IHRA definition in their opening briefs, and the Kentucky Attorney General touched on the matter only in passing in his brief. Kentucky Attorney General Br. at 30–31, Dkt. 55. In his briefing, Professor Woodcock instead applied *Mulholland v. Marion County Election Bd.*, which held that abstention is inappropriate in a challenge to a law that has already been "declared facially unconstitutional by a federal court[.]" 746 F. 3d 811, 818 (7th Cir. 2014); Prof. Woodcock Opening Br. at 66–67, Dkt. 50; Prof. Woodcock Reply Br. at 26, Dkt. 68.

Thus, Professor Woodcock's argument turned on what other courts have held about the IHRA definition, not whether this Court should hold the IHRA definition to be unconstitutional. Because *what* other cases have held is a matter of interpretation of legal language not directly relevant to the unique perspective on

the Palestine exception to free speech that amici are able to provide, amici did not initially have anything to contribute to this appeal. That changed, however, after Brandeis Center filed an amicus brief on April 30, 2026 that focused exclusively on the constitutionality of the IHRA definition of antisemitism. Brandeis Center Amicus Br., Dkt. 61.

It is unclear why the University consented to the filing of that amicus brief if it now wishes to argue that amici's brief on the same subject—the constitutionality of the IHRA definition—is "not helpful at *this* point in the litigation." *Id*. at 1 n.1 (indicating that the University consented to the filing of the brief); University's Response to Motion of JVP at 2, Dkt. 83. What distinguishes the two briefs is not subject matter but that amici's brief supports Professor Woodcock whereas Brandeis Center's supports the University. But "the perception of viewpoint discrimination" in determining whether to grant leave to file an amicus brief is to be avoided. *Neonatology Assocs., PA*, 293 F. 3d at 133.

### B. The Attorney General's and University's Arguments of Prejudice to Themselves and Burden to this Court Do Not Defeat Amici's Interest and the Important Information Amici Provides to the Court

Neither the Attorney General nor the University directly dispute amici's contention that this Court should adopt a diligence standard (as opposed to unforeseen circumstances, prejudice, or judicial burden standard) in evaluating a motion to file an out-of-time amicus brief. Motion of JVP at 6–11, Dkt. 77. The

Attorney General and the University also do not dispute that amici could not have foreseen that they would have an interest in this case until the Brandeis Center attempted to file its amicus brief on April 30, 2026. *Id*. at 11–13. Finally, the Attorney General and the University do not dispute that JVP, as movant and lead amicus, acted diligently in securing additional amici and filing its brief 12 days after learning about this case. *Id*. at 13–14.

The University does not meaningfully argue timeliness, but instead asserts that because "briefing in this matter has closed" and "the rules allow the University an opportunity to 'answer' the amicus brief," it opposes amici's motion. University's Response to Motion of JVP at 1, Dkt. 83. This argument has no bearing on the diligence standard for granting leave to file an out-of-time brief that amici have proposed and which the University does not contest.

The Attorney General gestures at two arguments in contending that amici's brief should be rejected as untimely. AG's Response to Motion of JVP at 1–2, Dkt. 80. One argument has to do with prejudice to the Attorney General and the other with the burden on this Court of accepting an out-of-time filing. Neither overcome amici's interest or the information amici provide for the Court to consider.

1. **Granting an Out-of-Time Filing Does Not Prejudice the Attorney General**

Granting this out-of-time amicus brief does not prejudice the Attorney General, and in fact benefits them. The Attorney General argues that this Court's

6

grant of an out-of-time amicus filing "deprives" the Attorney General "of the ability to address" amici's brief "in its principal brief." AG's Response to Motion of JVP at 1, Dkt. 80. However, as the Attorney General acknowledges, this Court "may . . . specify[] the time within which an opposing party may answer" in the event that this Court grants leave for an out-of-time filing. Fed. R. App. P. 29(a)(6); AG's Response to Motion of JVP at 2, Dkt. 80. Thus, if this Court believes that the Attorney General would be prejudiced by lack of an opportunity to answer amici's brief, this Court can allow the Attorney General to answer.

If this Court permits the Attorney General to answer, the Court's grant of leave to file an out-of-time brief will make the Attorney General *better off* than if amici had filed an on-time brief. This Court will accord the Attorney General additional space to address amici's arguments above and beyond the 13,000 words that the Attorney General had available to respond to Professor Woodcock's principal brief. Fed. R. App. P. 32(a)(7)(b)(i). In contrast, if amici had filed an on-time brief, if the Attorney General wished to respond to amici's brief, he would have needed to allocate part of his response to addressing amici's brief, reducing the amount of space available to him to respond to Professor Woodcock's principal brief. Thus, rather than suffer prejudice from amici's out-of-time filing, the Attorney General would enjoy a benefit. This is one reason for which amici argued in their motion that this Court should adopt a diligence standard, rather than a

prejudice standard, in evaluating motions to file out-of-time amicus briefs. Motion of JVP at 9–11, Dkt. 77.

### 2. Granting an Out-of-Time Filing Does Not Impose a Burden on This Court

Amici's out-of-time filing does not impose a burden on this Court. The Attorney General suggests that granting the out-of-time filing would impose a burden on this Court because this Court may provide the Attorney General with an opportunity to answer the amicus brief and "this matter is already submitted to a panel with oral argument scheduled." AG's Response to Motion of JVP at 2, Dkt. 80. However, as amici noted in their motion, "amicus briefs surely do not claim more than a very small part of a court's time" and they cannot delay a proceeding because they have no effect on deadlines for the filing of principal briefs—or, for that matter, the scheduling of oral argument. *Neonatology Assocs.,* 293 F. 3d at 133; Motion of JVP at 8–9, Dkt. 77. This conforms with the diligence standard, which amici argued for in their motion and which the Attorney General did not oppose, rather than a judicial burden standard, in evaluating motions to file out-of-time amicus briefs. Motion of JVP at 9–11, Dkt. 77.

Even if this Court were to look to the judicial burden standard, the burden of an out-of-time amicus filing in this case is particularly small and this Court can control the size of that burden. The Attorney General requests no more than 1,500 words for any answer and this Court can choose to grant fewer. AG's Response to

Motion of JVP at 2, Dkt. 80. Indeed, this Court can choose not to allow an answer at all. *See* Fed. R. App. P. 29(a)(6) (stating that this Court may "specify the time" for an answer). As amici argued in their motion, the prejudice to the Attorney General of allowing no answer at all would be slight, particularly given that under the expedited briefing schedule this Court ordered, Professor Woodcock had only four days to respond to the Brandeis Center's amicus brief. Motion of JVP at 14, Dkt. 77.

### C. Amici's Brief Presents an Informative Contrast to the Brandeis Center's Amicus Brief on the IHRA Definition

Amici's brief directly speaks to and offers a different perspective than the Brandeis Center's amicus brief, particularly on the IHRA definition. As amici argued in their motion, this Court should balance any judicial burden against the benefit to the Court of allowing amici to file their brief. *Id*. at 14. That benefit is considerable in this case because Professor Woodcock did not address the constitutionality of the IHRA definition of antisemitism in his principal brief. *Id*. at 11–12.

Absent amici's brief, this Court will not have the benefit of a sustained critique of the IHRA definition against which to evaluate the Brandeis Center's sustained defense of the IHRA definition in its amicus brief. In addition, the minimal burden of entertaining an answer to amici's brief (should this Court decide to entertain an answer at all), which could be filed as much as six or seven weeks

in advance of oral argument on July 28, 2026, cannot outweigh the Court's interest in amici's perspective on the IHRA definition.

## CONCLUSION

For the reasons stated above, movant and amici respectfully request that this Court grant their motion for leave to file an out-of-time amicus brief.


Dated: June 10, 2026                    Respectfully submitted,


                                        /s/ *Bina Ahmad*


                                        *Counsel for Amici*

**Form 6. Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with [the type-volume limit of Fed. R. App. P. [29(b)(4)_____]] [the word limit of Fed. R. App. P. [29(a)(4)_____]] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) [and [N/A_____]]:

   ☑ this document contains 2,270_____words, or

   ☐ this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this document has been prepared in a proportionally spaced typeface using Microsoft Office 16_____ in

   Times New Roman, Font Size 14_____, or

   ☐ this document has been prepared in a monospaced typeface using

   _____ with

   _____.

   /s/ - Bina Ahmad_____

   Attorney for JVP ACTION (D.B.A. JVP)_____

   Dated: June 10, 2026_____

**CERTIFICATE OF SERVICE**

I certify that on June 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Bina Ahmad*

*Counsel for Amici*